IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORENZO NICHOLS,          Plaintiff,v.DONNA SHABAN, *Correctional Food Service Supervisor*; JEFFREY FORTE, *Captain*;  MIKE HOWARD, *Inmate Employment Coordinator*; TOM MORAN, *Correctional Food Service Manager*          Defendants. | Civil Action No. 06 - 1320Judge Terrence F. McVerry /Magistrate Judge Lisa Pupo Lenihan |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.        RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss (doc. no. 16) be granted.

**II.       REPORT**

Plaintiff, Lorenzo Nichols, a state inmate confined at the State Correctional Institution at Mercer, Pennsylvania, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 against various officers and employees of the Pennsylvania Department of Corrections (DOC). Defendants have moved for dismissal of the Complaint alleging that Plaintiff failed to comply with the Pennsylvania Department of Corrections (DOC) three-step grievance process available to Pennsylvania state prisoners. For the reasons that follow, the Motion should be granted.

## A. Standard of Review

Defendants have filed a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) (doc. no. 16).  The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true.  Estelle v. Gamble, 429 U.S. 97 (1976).  The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, ___U.S. ___, 127 S.Ct. 1964-65.  In other words, "factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1955.  It is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged."  Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

In addition, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in considering a motion to dismiss under Rule 12(b)(6).  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990); DiNicola v. DiPaolo, 945 F. Supp. 848, 854 n.2 (W.D. Pa. 1996) (court is entitled to take judicial notice of public records); Barber v. Grow, 929 F. Supp. 820, 822 (E.D. Pa. 1996) (in considering a Rule 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account).

### B. Plaintiff's Allegations

Plaintiff asserts the following in his Complaint.

On 4-8-06, Donna Shaban retaliated against me by removing me from Dietary for no reason because I appealed her misconduct report of 1-20-05. Jeffrey Forte assisted Donna Shaban in her retaliation by ordering that I don't return to Dietary. Tom Moran assisted Donna Shaban by falsifying the facts on the Initial Grievance Response. On 4-17-06, in the Education Building, Mike Howard told me that he removed me from Dietary work assignment and officially placed me in vocational class full-time to further assist Donna Shaban in her retaliation. And on 9-20-06, after being rehired on 9-14-06, Tom Moran approached me in Dietary (while I was working) and told me to leave Dietary. When I asked why was I being kicked out of Dietary this time, Tom Moran said that I was malicious, decisive and none of his staff want me to work in Dietary. The truth is Donna Shaban found out I was working in Dietary and Tom Morna assisted her in retaliation.

Compl., ¶ IV.C.

### C. Failure to Exhaust Administrative Remedies

Defendants' basis for dismissal of the complaint is Plaintiff's alleged failure to have exhausted available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners. Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit. The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

> (a)   Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in <u>Nyhuis v. Reno</u>, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner).  In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions.  In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement.  <u>Booth</u>, 206 F.3d at 300; <u>Nyhuis</u>, 204 F.3d at 66.  A unanimous Supreme Court affirmed the Court of Appeals' holding in <u>Booth v. Churner</u>, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures. In addition, in <u>Porter v. Nussle</u>, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

The administrative grievance procedure for Pennsylvania inmates is codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System."  The purpose of the grievance system is to insure that every inmate confined in a Bureau of Correction facility has an avenue through which prompt resolution of any problem which arises during the course of confinement may be sought. DC-ADM 804 ¶ 1. The grievance system applies to all state correctional institutions and provides three levels of review:  1) initial review by the facility grievance coordinator; 2) appeal of initial review to the

superintendent or regional director; and 3) final appeal to the Secretary's Office. DC-ADM 804 ¶ VI. The administrative policy further provides that, prior to utilizing the grievance system, prisoners are required to attempt to resolve problems on an informal basis through direct contact or by sending an inmate request slip to the appropriate staff member. DC-ADM 804 ¶ V.

In the instant action, Defendants assert that the Complaint should be dismissed because Plaintiff failed to have exhausted his administrative remedies in that he failed to have completed the three-step grievance process provided for in DC-ADM 804. In this regard, Defendants assert that Plaintiff did not complete the three-step process because the Secretary's Office refused to review his grievance on the basis that he did not submit the required documentation.

In the instant action, Plaintiff wrote Grievance No. 148793 on April 8, 2006, complaining that Defendant Shaban walked into Dishroom No. 1 and saw a water jet sprayer that Plaintiff had left on top of a trash can because he had to climb out of the new security gate to use the bathroom. She then stated: "What the f&** is going on back here? There is a line all the way out the fu*&^% window" and walked out. Moments later, C.F.S.I. Morosky walked into the Dishroom and asked Plaintiff to re-insert the water jet into the dish machine. Shortly thereafter, Shaban, Morosky, Lt. Mackey, Sergeant Wentroble, and CO Mazcko surveyed the area and told Plaintiff that the water jet was a potential threat and escorted Plaintiff from the area. Plaintiff alleged that the prison officials falsely accused him of damage to prison property and being a threat due to his actions in appealing Misconduct No. A751760 wherein Defendant Shaban accused him of using offensive language and refusing to obey an order; Plaintiff was found guilty of this misconduct and served 23 days disciplinary time (doc. no. 16-2, pp. 22-23).

On April 20, 2006, Plaintiff received an Initial Response denying his Grievance (doc. no. 16-2, p. 26). On May 5, 2006, Plaintiff filed an appeal to Superintendent Wilson (doc. no. 23, p. 34-36). On June 6, 2006, Plaintiff received a response from Superintendent Wilson dismissing his appeal because it consisted of three pages and, therefore, exceeded the two-page limit set forth in DC-ADM 804 (doc. no. 16-2, p. 28).

At some point, Plaintiff filed an appeal to the Department of Corrections' Secretary's Office of Inmate Grievances and Appeals. On May 24, 2006, the Secretary's Office notified Plaintiff that he had not submitted copies of all of the required documentation in his initial appeal to the Secretary's Office, *i.e.*, copies of the Initial Grievance, Initial review, the Appeal to the Facility manager and the Facility Manager's decision. The Secretary's Office notified him that he had ten working days to provide the documents needed to conduct final review (doc. no. 16-2, p. 27). On July 12, 2006, the Secretary's Office dismissed his appeal (doc. no. 23, p. 38).

On September 20, 2006, Plaintiff filed Grievance No. 164524 alleging discrimination in being thrown out of the Dietary Department. On October 6, 2006, Plaintiff received an Initial Response denying his grievance stating that Food Services did not want Plaintiff on their staff (doc. no. 16-2).

### D. Procedural Default

The Court of Appeals for the Third Circuit has held that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court. *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). In so holding, the Court of Appeals specifically held that failing to specifically name accused individuals in a grievance amounted to procedural default

because the regulations so required.[1]  The United States Supreme Court adopted a similar holding in Woodford v. Ngo, ___ U.S. ___, 126 S.Ct. 2378 (June 22, 2006) wherein it held that an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement.  Woodford, 126 S.Ct. at 2382.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  This Court has described the doctrine as follows: "[A]s a general rule ⋯ courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 126 S. Ct. at 2385-2386 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage.  The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodard, 126 S. Ct. at 2387.  The Court concluded that the benefits of exhaustion

---

1. The relevant regulations provide as follows: "The inmate shall include a statement of the facts relevant to the claim.  The inmate should identify any persons who may have information that could be helpful in resolving the grievance.  The inmate should also include information on attempts to resolve the matter informally.  DC-ADM 804, Part VI.A.1.d.

could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. Woodford, 126 S.Ct. at 2388.

In the case at bar, Plaintiff procedurally defaulted all of his claims in two major respects. First, by failing to perfect his appeals of Grievance No. 148793 to Superintendent Wilson and to the DOC Secretary's Office by failing to attach the documentation required for final review. Second, Plaintiff procedurally defaulted his claims against Defendants Forte and Howard by failing to name those individuals in any grievance within the mandatory fifteen day period.

As to the first procedural default, the Court of Appeals for the Third Circuit specifically has held that the failure to submit the required documentation for final review constitutes procedural default and results in dismissal of the Complaint. See Eakle v. Palakovich, 200 Fed. Appx. 155, 156, 2006 WL 2917531, *1 (3d Cir. 2006). As to the second procedural default, the Court of Appeals for the Third Circuit specifically has held that failing to specifically name relevant facts and accused individuals in a grievance amounted to procedural default because the regulations so required.[2] See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).

In the absence of any controlling authority to the contrary, this Court is required to follow the directives of the Court of Appeals for the Third Circuit and dismiss the Complaint due to the Plaintiff's failure to have properly exhausted his available administrative remedies.

### III.   CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants'

---

2. The relevant regulations provide as follows: "The inmate shall include a statement of the facts relevant to the claim. The inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also include information on attempts to resolve the matter informally. DC-ADM 804, Part VI.A.1.d.

Motion to Dismiss (doc. no. 16) be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

                                                                                    _____

Dated:      July 18, 2007                    Lisa Pupo Lenihan
                                              United States Magistrate Judge

cc:        The Honorable Terrence F. McVerry
           United States District Judge

           Lorenzo Nichols, EP-7457
           SCI Fayette
           Post Office Box 9999
           LaBelle, PA 15450